**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| MARK OLRICH, et al., | : | **Civil Action No. 24-11528-MEF-AME** |
| | : | |
| Plaintiffs, | : | **OPINION and ORDER** |
| | : | |
| v. | : | |
| | : | |
| ALBONTE B. COLLINS, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ESPINOSA, U.S.M.J.**

This matter is before the Court on the motion by non-party Great West Casualty Company ("Great West") to intervene in this action pursuant to Federal Rule of Civil Procedure 24(a) or, alternatively, Rule 24(b) [D.E. 77]. Defendants PGT Services, Inc. and PGT Trucking, Inc. ("the PGT Defendants") and Liedtka Logistics, LLC ("Liedtka") oppose the motion. For the following reasons, Great West's motion is denied.

## I.    BACKGROUND

This action arises from a multi-vehicle accident that occurred on July 18, 2024, on Interstate 80 in Hardwick, New Jersey. At the time of the accident, Plaintiffs Mark and Michele Olrich were traveling in a personal vehicle operated by Mark Olrich when a commercial vehicle operated by Defendant Albonte B. Collins allegedly collided with both Plaintiffs' vehicle and a vehicle operated by Jose Santos, a non-party to this action. Collins's vehicle was owned by Defendant Gukas Xpress, LLC ("Gukas"), and the trailer attached to the vehicle was owned by Defendant Navarro Trucking, LLC ("Navarro"). The trailer was allegedly leased to the PGT Defendants.

1

The Second Amended Complaint, Plaintiffs' operative pleading, alleges damages arising from the accident and names Collins, Gukas, the PGT Defendants, Liedtka, and the United States Gypsum Corporation ("USGC") as defendants. Plaintiffs assert individual negligence claims against each defendant and further allege that Gukas, Navarro, the PGT Defendants, Liedtka, and USGC are vicariously liable for Collins's alleged negligence.

Great West's purported involvement arises from separate contractual and insurance relationships, specifically certain interline agreements among the various defendants. In their respective Answers, the PGT Defendants and Liedtka asserted crossclaims against Gukas for contractual indemnification pursuant to interline agreements between those parties. (Liedtka Ans. to Second Am. Compl., D.E. 53 at 109-10; PGT Defendants Ans. to Second Am. Compl., D.E. 45 at 12-13).

The interline agreements were executed on July 27, 2020, between Gukas and the PGT Defendants and, separately, between Gukas and Liedtka. Those agreements govern Gukas's use of the PGT Defendants' and Liedtka's trailers and contain clauses requiring Gukas to indemnify and hold harmless the PGT Defendants and Liedtka from liability arising from Gukas's conduct. (Nast Decl., Ex. A, D.E. 89-1; Great West Mot. to Intervene, Ex. K, D.E. 77-12). Before executing those agreements, Gukas obtained a Great West insurance policy effective April 25, 2024, through April 25, 2025 ("the Great West Policy"). The Great West Policy includes auto liability coverage limits of $1,000,000 for vehicles marked with specified numbers including Collins's vehicle, which bore one of the numbers identified in the policy. (Great West Mot. to Intervene, Ex. M, D.E. 77-14).

On March 6, 2025, the PGT Defendants sent Gukas a demand for defense and indemnification on behalf of Navarro. (Great West Mot. to Intervene, Ex. E, D.E. 77-6). Great

West responded on June 3, 2025, accepting the tender and agreeing to provide the defense and indemnification of Navarro, the owner of the trailer attached to the vehicle driven by Collins. (Great West Mot. to Intervene, Ex. F, D.E. 77-7).

The PGT Defendants later forwarded a letter thanking Great West for accepting the tender of defense for both Navarro and the PGT Defendants. (Great West Mot. to Intervene, Ex. G, D.E. 77-8). Great West alleges that it consented only to accepting the tender for Navarro and that it informed the PGT Defendants of that position in a December 4, 2025 letter. (Great West Mot. to Intervene, Ex. I, D.E. 77-10).

On September 22, 2025, Liedtka requested that Great West defend and indemnify Liedtka pursuant to its interline agreement with Gukas. (Great West Mot. to Intervene, Ex. H, D.E. 77-9). Liedtka alleges that it has not received a response from Great West. (Liedtka Resp. in Opp'n to Mot. to Intervene, D.E. 90 at 3).

On March 27, 2026, Great West filed a motion to intervene. On April 20, 2026, the PGT Defendants and Liedtka filed separate responses in opposition.

## II.   DISCUSSION

### A.   Legal Standard

Intervention is governed by Federal Rule of Civil Procedure 24, which sets forth the requirements for intervention as of right and permissive intervention.

Rule 24(a)(2) provides for intervention as of right. A movant is entitled to intervene when it makes a timely application, shows a sufficient interest in the underlying litigation, demonstrates that the interest may be impaired or affected by the disposition of the action, and establishes that the existing parties do not adequately represent the proposed intervenor's interests. *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005) (citing

3

*Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998)). "Each of these requirements must be met to intervene as of right." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995).

Timeliness is assessed using three factors: the stage of the proceeding, the prejudice that delay may cause, and the reason for the delay. *Id.* at 369. The inquiry is practical, not mechanical. The mere passage of time does not alone render a motion untimely; rather, the key question is whether proceedings of substance on the merits have already occurred. *Id.* at 369. Such merit proceedings can include the taking of depositions, the filing of dispositive motions, and other significant developments during the relevant period. *Id.* at 370. Delay should be measured from the time the proposed intervenor knew or should have known of the risk to its asserted rights or the inadequacy of the existing representatives. *See Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 950 (3d Cir. 2012). In other words, timeliness turns on when the intervenor had reason to act and whether it did so reasonably.

To satisfy the interest requirement, the proposed intervenor must show a significantly protectable legal interest, meaning an interest that is direct rather than generalized, remote, or contingent. A mere economic interest in the outcome of litigation is ordinarily insufficient. *Treesdale*, 419 F.3d at 220 (quoting *Mountain Top*, 72 F.3d at 366). The possibility that a lawsuit may diminish or impede a third party's ability to recover in separate litigation, standing alone, does not constitute a sufficiently protectable interest to support intervention. *Mountain Top*, 72 F.3d at 366. This Court has also recognized that an insurer's interest in a tort case can be too contingent where the insurer's concern depends on future coverage determinations or other collateral issues rather than the immediate merits of the underlying liability action. See *CPL (Linwood), LLC v. Rossetti Roofing, Inc.*, No. CV 09-6228, 2010 WL 11570374, at *2 (D.N.J.

July 28, 2010); *Castracane-Sedlac v. Mason*, No. CV 20-6080, 2021 WL 4710513, at *3 (D.N.J. Oct. 8, 2021).

The impairment prong requires more than speculation. The movant must show that its interest is "in jeopardy" in the litigation, meaning it "may be affected or impaired, as a practical matter, by the disposition of the action." *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1122 (3d Cir. 1992). Courts assess "the practical consequences of the litigation" and any significant legal effect on that interest, including whether the disposition may have a meaningful *stare decisis* effect on the applicant's claims or otherwise affect its rights through the relief sought. *Id.* at 1122–23. It is not enough that the interest is incidentally affected. *Id.* at 1123.

Finally, adequacy of representation requires the proposed intervenor to show that its interests are not adequately represented by the existing parties, a burden that remains on the applicant. *Brody*, 957 F.2d at 1123 (citing *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 1982)). Representation is inadequate where the applicant's interests diverge sufficiently from the existing parties' interests, where there is collusion, or where an existing party fails to diligently prosecute the action. *Id.*

Rule 24(b), in contrast, permits intervention under a more lenient but discretionary basis. Permissive intervention requires a timely motion and a claim or defense sharing a common question of law or fact with the main action. Fed. R. Civ. P. 24(b). Even when that threshold is met, the Court must consider whether intervention will "unduly delay or prejudice the adjudication" of the original parties' rights. *McKay v. Heyison*, 614 F.2d 899, 906 (3d Cir. 1980). District courts have broad discretion in determining whether permissive intervention is appropriate. *United States v. Territory of Virgin Islands*, 748 F.3d 514, 524 (3d Cir. 2014) (citing *Brody*, 957 F.2d at 1115).

5

**B.        Analysis**

The threshold question is whether Great West has a sufficient interest to intervene. The underlying action turns on whether the Defendants acted negligently and caused Plaintiffs' damages. Although Great West's contractual relationships with the PGT Defendants and Liedtka provide context for their crossclaims against Gukas, this case concerns tort liability rather than any determination regarding the validity of the interline agreements. That core distinction calls into question the sufficiency of Great West's interest in intervening.

Great West contends it has a sufficient interest because the interline agreements allegedly violate N.J.S.A. § 39:14-2 by impermissibly shifting liability for negligence arising out of the accident. Framed that way, however, Great West's asserted interest depends on a series of contingencies: (a) how the interline agreements are interpreted; (b) whether those agreements are enforceable under New Jersey law; and (c) whether any resulting obligation triggers coverage under the Great West policy. Each of those issues is separate from and unnecessary to resolve in the negligence claims pending before the Court.

As the Third Circuit has emphasized, an interest is not significantly protectable under Rule 24(a) when it depends on collateral legal questions. *Treesdale*, 419 F.3d at 220. Courts in this District have applied that principle to deny intervention where coverage issues may be litigated separately. See *CPL (Linwood)*, 2010 WL 11570374, at *2; *Castracane-Sedlac*, 2021 WL 4710513, at *3. Applying those principles here, Great West's interest is not sufficiently direct. The outcome of this action will determine whether Defendants are liable to Plaintiffs in tort; it will not determine whether Great West owes coverage, nor will it conclusively resolve the scope or enforceability of the interline agreements as between the Defendants.

Even accepting Great West's position that N.J.S.A. § 39:14-2 may bear on the validity of

6

the indemnification provisions in the interline agreements, that question arises only in connection with the potential allocation of liability among Defendants and their insurers. It is therefore collateral to the merits of Plaintiffs' negligence claims. Accordingly, Great West's interest is, at most, a contingent economic interest in how liability may ultimately be allocated, which the Third Circuit has routinely deemed insufficient. See *Mountain Top*, 72 F.3d at 366; *Treesdale*, 419 F.3d at 220.

Rule 24(a)'s impairment requirement is also not met. Disposition of this negligence action will not, as a practical matter, impair Great West's ability to protect its asserted interests. Nothing in this proceeding will preclude Great West from later litigating its coverage obligations under the policy, the scope of any duty to defend or indemnify, or the enforceability of the interline agreements under New Jersey law. Great West itself recognizes that possibility, because in its April 27, 2026, reply it asks the Court to avoid ruling on the N.J.S.A. § 39:14-2 issue if the Court denies intervention, stating that the issue "should be left to be determined if and when raised in a separate declaratory judgment or other form of action." (Great West's Reply in Support of Its Motion to Intervene, D.E. 92). Because Great West remains free to pursue its contractual and statutory arguments in separate litigation, the impairment prong is not satisfied.

Great West has also not shown that Gukas inadequately represents its interests. Great West contends that Gukas, its insured, is unlikely to seek invalidation of its own contract with its co-defendants because doing so could harm Gukas's relationship with those parties. (Great West Mot. to Intervene, D.E. 77-15 at 9). That contention does not establish inadequacy in the defense of the underlying negligence action. Gukas and Great West share the same immediate interest in minimizing liability in this case, and there is no indication of collusion, adversity, or lack of diligence. Gukas also denied all crossclaims in its answer to the Second Amended Complaint on

September 19, 2025. (Gukas Ans. to Second Am. Compl., D.E. 57 at 24). Accordingly, Great West has not shown that Gukas will fail to adequately protect its interests.

Great West's motion is also untimely. Although Plaintiffs filed the Second Amended Complaint on July 11, 2025, and Liedtka and the PGT Defendants filed their answers on July 25, 2025, Great West did not move to intervene until March 27, 2026, after fact discovery had already begun and after Defendant Collins and Trooper Visco had been deposed, with Plaintiffs' depositions scheduled shortly thereafter. (Nast Decl., D.E. 89-1). Intervention at this stage would risk disrupting the discovery schedule and injecting contract-interpretation issues into an already progressing negligence action.

Because Great West has not satisfied all requirements of Rule 24(a)(2), intervention as of right must be denied.

Permissive intervention is likewise unwarranted. Although Great West's requested intervention has some factual overlap with the main action because it arises from the same accident and related tender and indemnity demands, the overlap is limited. Great West seeks to litigate insurance coverage, contractual indemnity, and the legality and scope of the interline agreements under N.J.S.A. § 39:14-2, while the underlying action concerns whether the defendants are liable for the accident alleged in the Second Amended Complaint. That distinction matters. Resolutions of Great West's concern would not facilitate an efficient resolution of the tort claims at the core of this action. Instead, it would do the opposite.

Permitting intervention would unduly delay and prejudice the adjudication of the original parties' rights. Adding Great West's coverage concerns would expand this negligence case into a broader dispute over contract interpretation and likely require substantial additional discovery and motion practice—significantly disrupting the existing schedule. Because Great West may

pursue those issues in a separate action, intervention here would add complexity without advancing the resolution of Plaintiffs' claims.

### III.   CONCLUSION AND ORDER

For the foregoing reasons, Great West's intervention pursuant to Rule 24(a), or alternatively Rule 24(b), is not warranted.

**IT IS** on this 24th day of July 2026,

**ORDERED** that Great West's motion to intervene [D.E. 77] is **DENIED**.

    /s/ *André M. Espinosa*
ANDRÉ M. ESPINOSA
United States Magistrate Judge